# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RUIAN XINSHUO TRADING CO., LTD.,

*Plaintiff,*

v.

RB DISTRIBUTION, INC.,

*Defendant.*

Case No. 2:26-cv-1412

**JURY TRIAL DEMANDED**

## COMPLAINT FOR DECLARATORY JUDGMENTS

Plaintiff Ruian Xinshuo Trading Co., Ltd. ("Plaintiff" or "Ruian Xinshuo"), by and through its undersigned counsel, brings this action against Defendant RB Distribution, Inc. ("Defendant" or "RB") for declaratory judgments that Plaintiff's accused product does not infringe U.S. Patent No. 12,234,755 B2 and that claims 1–18 of that patent are invalid under 35 U.S.C. § 103. Plaintiff alleges as follows:

## NATURE OF THE ACTION

1. This action arises from RB's use of Amazon's Patent Evaluation Express program ("APEX") to accuse Plaintiff's automotive replacement product, identified by Amazon Standard Identification Number B0CT8P77SZ, of infringing U.S. Patent No. 12,234,755 B2.

2. The accused product is an aluminum engine oil-filter-housing and oil-cooler replacement assembly marketed for use with certain Chrysler, Dodge, Jeep, and Ram vehicles equipped with 3.6-liter engines (the "Accused Product").

1



3.    RB invoked Amazon's extrajudicial patent-enforcement procedure and sought removal of the Accused Product from Amazon's marketplace.

4.    RB's APEX submission identified U.S. Patent No. 12,234,755 B2 as the asserted patent and identified Plaintiff's ASIN B0CT8P77SZ as the allegedly infringing listing.

5.    Amazon informed Plaintiff that, unless Plaintiff obtained a retraction from RB, commenced a federal declaratory-judgment action, or participated in Amazon's neutral-evaluation procedure within three weeks, Amazon would remove the Accused Product and materially identical variants.

6.    Plaintiff did not agree to participate in APEX. No neutral evaluator adjudicated whether the Accused Product infringed any claim of the asserted patent.

7.    Amazon thereafter removed the Accused Product based on RB's infringement report and Plaintiff's nonparticipation in APEX—not based on any judicial or administrative determination of infringement.

8.    RB's patent assertion and the resulting removal have impaired Plaintiff's ability to market and sell the Accused Product in the United States and have created a concrete, immediate, and continuing controversy concerning infringement and validity.

2

9.   The Accused Product does not infringe any valid claim of U.S. Patent No. 12,234,755 B2.

10.   Independently, claims 1–18 of U.S. Patent No. 12,234,755 B2 are invalid as obvious because the asserted combination of a cast oil-filter and oil-cooler support, internal lubrication passages, threaded openings, and a threaded filter closure was disclosed by multiple prior-art references long before the patent's asserted August 21, 2020 priority date.

## THE PARTIES

11.   Plaintiff Ruian Xinshuo Trading Co., Ltd. is a company organized and existing under the laws of the People's Republic of China.

12.   Plaintiff's principal address is No. 40 Jiefang Road, Hantian Village, Tangxia Town, Ruian, Wenzhou, Zhejiang 325204, People's Republic of China.

13.   Plaintiff markets and sells automotive replacement parts through e-commerce platforms, including Amazon.

14.   Plaintiff owns or controls the Amazon seller account through which the Accused Product was offered under ASIN B0CT8P77SZ.

15.   Upon information and belief, Defendant RB Distribution, Inc. is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania.

16.   Upon information and belief, RB maintains its principal place of business at 3400 East Walnut Street, Colmar, Pennsylvania 18915.

17.   Upon information and belief, RB is a wholly owned subsidiary of Dorman Products, Inc. and manufactures, distributes, and sells automotive replacement parts and accessories.

18.   RB is identified as the applicant and assignee of record of U.S. Patent No. 12,234,755 B2.

3

**JURISDICTION AND VENUE**

19. This action arises under the Patent Act, 35 U.S.C. §§ 1 *et seq.*, including 35 U.S.C. §§ 103 and 271.

20. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

21. This Court may grant the requested declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

22. An actual controversy exists because RB affirmatively accused the Accused Product of infringing the '755 Patent, invoked Amazon's APEX patent-enforcement process, caused Amazon to remove the Accused Product, and continues to maintain an infringement position that prevents or impairs Plaintiff's sale of the Accused Product.

23. The parties therefore have immediate and adverse legal interests of sufficient reality and immediacy to support declaratory relief.

24. This Court has personal jurisdiction over RB because RB is incorporated in Pennsylvania and maintains its principal place of business in this District.

25. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because RB resides in this District within the meaning of 28 U.S.C. § 1391(c)(2).

26. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action—including RB's decision to assert the '755 Patent and its maintenance of that assertion—occurred in or was directed from this District.

**THE ACCUSED PRODUCT**

27. The Accused Product is identified by Amazon as ASIN B0CT8P77SZ.

28. The Accused Product is sold as a replacement engine oil-filter-housing and oil-cooler assembly for specified vehicles.

4

29. The Accused Product is a multi-component assembly that includes, among other components, a housing body, a separate oil cooler, filter-related components, sensors, seals, and fasteners.

30. The Accused Product is intended to replace an original-equipment oil-filter and oil-cooler assembly and has substantial lawful and noninfringing uses.

31. Amazon is a material sales channel for Plaintiff's automotive replacement products in the United States.

32. Continued removal of ASIN B0CT8P77SZ deprives Plaintiff of access to customers, sales history, product reviews, market position, and goodwill associated with the listing.

## RB'S AMAZON APEX ASSERTION

33. RB submitted an APEX infringement report to Amazon alleging that the Accused Product infringed U.S. Patent No. 12,234,755.

34. Amazon assigned RB's APEX submission Case ID 20279126711.

35. The APEX notice identified:
   a) RB Distribution, Inc. as the patent owner;
   b) U.S. Patent No. 12,234,755 as the asserted patent;
   c) ASIN B0CT8P77SZ as the accused listing;
   d) gmassina@dormanproducts.com as the patent owner's contact email; and
   e) 3400 East Walnut Street, Colmar, Pennsylvania 18915 as the patent owner's address.

36. A true and correct copy of the APEX notice is attached as **Exhibit 1**.

37. Amazon informed Plaintiff that it had three principal options: resolve the dispute directly with RB; commence a federal declaratory-judgment action and provide Amazon with the complaint; or participate in APEX by signing Amazon's agreement and paying the required deposit.

38. Amazon further stated that, absent one of those actions within three weeks, it would remove the Accused Product and materially identical variants.

5

39. Plaintiff did not participate in APEX, and no evaluator considered claim construction, infringement, invalidity, or any prior-art evidence.

40. Amazon subsequently issued a removal notice stating that it had removed ASIN B0CT8P77SZ because of a patent complaint.

41. The removal notice identified:
   a) infringement type "Patent";
   b) asserted intellectual property "US12,234,755B2";
   c) Complaint ID 20271987831;
   d) rights-owner name "Dorman"; and
   e) rights-owner email gmassina@dormanproducts.com.

42. A true and correct copy of Amazon's removal notice is attached as **Exhibit 2**.

43. Amazon stated that the listing could be reactivated through, among other things, a court order establishing that Plaintiff is permitted to sell the Accused Product or a retraction submitted directly by the rights owner.

44. RB's use of APEX was therefore an affirmative act of extrajudicial patent enforcement intended to restrict Plaintiff's sale of the Accused Product.

45. The removal remains an operative commercial injury and an impediment to Plaintiff's continued sale of the Accused Product.

## THE ACCUSED PRODUCT DOES NOT INFRINGE THE '755 PATENT

46. RB's APEX notice did not identify any particular asserted claim of the '755 Patent.

47. RB did not provide Plaintiff with a claim chart explaining how the Accused Product allegedly satisfies every limitation of any claim.

48. Claims 1–11 of the '755 Patent are manufacturing-method claims.

49. The mere marketing, importation, or sale of a finished oil-filter-housing assembly does not establish that Plaintiff performs every manufacturing step recited in claims 1–11.

50. Plaintiff does not perform in the United States every step of any manufacturing method claimed in claims 1–11.

51. The Accused Product is not manufactured through a process satisfying every limitation of independent method claims 1 or 8 and therefore does not infringe those claims under 35 U.S.C. § 271(g).

52. In particular, the manufacture of the Accused Product does not employ the complete claimed sequence of casting a body containing the claimed "casted aperture" or "plurality of casted apertures" and then internally threading those casted apertures in the manner required by claims 1 and 8.

53. Ordinary through-holes that receive separate bolts, or openings created by drilling and machining after formation of a casting, do not satisfy the claimed "casted aperture" limitations as properly construed.

54. Claims 12 and 18 are apparatus claims requiring all recited structural limitations to be present in a single claimed combination.

55. Independent claim 12 requires, among other limitations, a "single-cast metallic body" having the claimed filter housing, lower and upper surfaces, lubrication-flow-path relationship, and an "internally-threaded casted aperture" for mating with an externally threaded member.

56. Independent claim 18 similarly requires a "single-cast metallic body" containing the claimed filter housing, first and second surfaces, lubrication flow path, and an internally threaded casted aperture configured to mate with an externally threaded member.

57. The Accused Product does not contain, in one single-cast metallic body, every structural and relational limitation of claims 12 and 18.

58. At minimum, the Accused Product does not possess an "internally-threaded casted

7

aperture," as that term is properly construed, in the claimed combination.

59.   RB cannot treat every conventional drilled, tapped, or bolt-receiving opening as an "internally-threaded casted aperture" without disregarding the claim language and improperly expanding the claims to encompass the prior art.

60.   Because the Accused Product does not satisfy every limitation of independent claims 1, 8, 12, and 18, it also does not infringe dependent claims 2–7, 9–11, or 13–17.

61.   Plaintiff has not induced infringement under 35 U.S.C. § 271(b) because there is no underlying direct infringement and Plaintiff has not acted with the specific intent required for inducement.

62.   Plaintiff has not contributorily infringed under 35 U.S.C. § 271(c) because there is no underlying direct infringement and the Accused Product is a lawful replacement product with substantial noninfringing uses.

63.   The Accused Product does not infringe under the doctrine of equivalents because treating the missing limitations as satisfied by equivalents would vitiate express claim requirements and improperly ensnare the prior art.

## THE ASSERTED PATENT AND ITS INVALIDITY

64.   U.S. Patent No. 12,234,755 B2 is titled "Method and Process for Manufacturing a Unitary Oil Filter Adaptor."

65.   The '755 Patent issued on February 25, 2025, from U.S. Patent Application No. 18/194,343.

66.   The face of the '755 Patent identifies RB as the applicant and assignee.

67.   The '755 Patent claims priority through related applications to U.S. Provisional Application No. 63/068,759, filed August 21, 2020.

8

68.   A true and correct copy of the '755 Patent is attached as **Exhibit 3**.

69.   The '755 Patent contains eighteen claims.

70.   Claims 1 and 8 are independent manufacturing-method claims. Claims 12 and 18 are independent apparatus claims.

71.   Claims 2–7 depend directly or indirectly from claim 1; claims 9–11 depend from claim 8; and claims 13–17 depend directly or indirectly from claim 12.

72.   In general, the claims concern a cast metallic oil-filter adaptor having a filter housing, surfaces for connection to an engine lubrication system and oil cooler, an internal lubrication flow path, and one or more threaded apertures.

73.   Each of those basic concepts was known before August 21, 2020.

## THE PRIOR ART

74.   European Patent No. EP 0 816 645 B1 ("EP '645"), titled "Mounting Bracket for Aggregates of Oil Treatment and Maintenance Mounted on the Block of an Internal Combustion Engine," was publicly available years before the '755 Patent's asserted priority date.

75.   A true and correct copy of EP '645, together with an English translation of the relevant portions, is attached as **Exhibit 4**.

76.   EP '645 discloses an integrally cast, compact carrier or supporting component mounted to an internal-combustion-engine crankcase.

77.   EP '645 discloses a filter receptacle or filter housing at one end of the carrier, a mounting surface for connection to the engine crankcase, and a connection surface configured to receive an oil cooler.

78.   EP '645 further discloses oil-supply and oil-discharge passages formed in the carrier and connecting the engine lubrication system, oil cooler, and oil filter.

79. EP '645 also discloses multiple fastening and auxiliary holes in the cast carrier for receiving screws and securing the cooler and carrier to associated engine components.

80. European Patent No. EP 2 532 848 B1 ("EP '848"), titled "Filter and Cooling Device," was publicly available before August 21, 2020.

81. A true and correct copy of EP '848, together with an English translation of the relevant portions, is attached as **Exhibit 5**.

82. EP '848 expressly discloses that the supporting carrier may be made as an aluminum cast component.

83. EP '848 further discloses internal oil channels formed in the carrier, including a bypass channel and a connecting channel aligned coaxially with respect to a common longitudinal centerline.

84. International Patent Publication No. WO 2008/009738 A1 ("WO '738"), titled "Liquid Heat Exchanger Unit," was publicly available before August 21, 2020.

85. A true and correct copy of WO '738, together with an English translation of the relevant portions, is attached as **Exhibit 6**.

86. WO '738 discloses a connection component having multiple internally threaded holes that directly receive externally threaded fastening screws.

87. British Patent No. GB 2 287 199  ("GB '199"), titled "Oil Filter Assembly," was publicly available before August 21, 2020.

88. A true and correct copy of GB '199 is attached as **Exhibit 7**.

89. GB '199 discloses a filter housing having threads configured to receive and engage a threaded filter closure.

90.    EP '645, EP '848, WO '738, and GB '199 are analogous prior art because each concerns engine lubrication, oil filtration, oil cooling, fluid passages, cast carriers, or threaded mechanical connections used in such assemblies.

### CLAIM CHART SHOWING OBVIOUSNESS OF THE ASSERTED PATENT

91.    The following claim chart identifies, on a limitation-by-limitation basis, the principal prior-art disclosures rendering claims 1–18 of the '755 Patent obvious. The chart is not intended to limit Plaintiff's invalidity grounds, and Plaintiff reserves the right to rely on additional references, combinations, evidence, and grounds disclosed through discovery and expert analysis.

92.    EP '645 supplies the principal oil-filter and oil-cooler adaptor architecture. It discloses an integrally cast carrier mounted to an engine crankcase, a filter receptacle, a surface for mounting an oil cooler, internal oil-supply and oil-return passages, and multiple fastening apertures. EP '848 expressly teaches that the carrier may be formed as a cast-aluminum component and further discloses internal oil channels arranged coaxially along a longitudinal centerline. WO '738 teaches multiple internally threaded apertures in a connecting component that directly receive externally threaded fastening screws. GB '199 teaches an internally threaded filter housing that receives a complementary externally threaded closure.

93.    A person of ordinary skill in the art would have had reason to combine these teachings because they concern the same or closely related field of engine oil filtration, cooling, fluid routing, cast support structures, and mechanical attachment. The combinations would have applied known casting, drilling, tapping, and threaded-connection techniques to known oil-filter and oil-cooler assemblies and would have produced predictable results, including improved durability, simplified assembly, direct component attachment, reduced leakage points, and more compact oil routing.

| Claim and Limitation | Prior-Art Disclosure | Obviousness Basis |
|---|---|---|

| | | |
|---|---|---|
| **Claim 1:** "A method for manufacturing a unitary metallic adaptor for an engine lubrication system" | EP '645 discloses manufacturing a compact, integrally cast carrier for mounting oil-treatment components to an internal-combustion-engine crankcase. EP '848 ¶ [0026] expressly teaches that such a carrier may be manufactured as an aluminum casting. | It would have been obvious to manufacture EP '645's integrally cast oil-treatment carrier from cast aluminum as expressly taught by EP '848. Aluminum was a known material for improving strength, durability, heat resistance, and dimensional stability in engine-lubrication assemblies. |
| **Claim 1:** "casting an elongated unitary metallic body" | EP '645 ¶ [0007] describes carrier 1 as a compact, integrally cast component. EP '848 ¶ [0026] teaches that the carrier may be an aluminum cast part. EP '645's figures show a body extending between the filter region and the opposite mounting and fluid-connection region. | Combining EP '645's unitary cast carrier with EP '848's express cast-aluminum teaching yields the claimed unitary metallic body. Selecting an elongated configuration to accommodate the filter, cooler, oil passages, and mounting locations would have been a conventional dimensional and packaging choice. |
| **Claim 1:** "a filter housing at a first end of the elongated unitary metallic body" | EP '645 ¶ [0008] and Figures 2 and 4 disclose a receptacle for oil filter 5 positioned at one side or end of carrier 1. | EP '645 discloses this limitation or, at minimum, renders it obvious because its oil-filter receptacle is integrated into one end region of the cast carrier. |
| **Claim 1:** "a lower surface configured to mate with the engine lubrication system" | EP '645 ¶ [0007] discloses connection surface 2 on flange 3, through which carrier 1 is sealingly mounted to the engine crankcase. Figures 3 and 4 show that surface and the associated oil openings. | EP '645's crankcase connection surface performs the same claimed function of mating the cast adaptor to the engine lubrication system. |
| **Claim 1:** "an upper surface between the filter housing and a second end … configured to mate with a | EP '645 ¶ [0011] and Figures 2 and 4 disclose connection surface 11, against which oil cooler 6 is mounted and clamped. The surface lies between the filter receptacle and the opposite end region of carrier 1. | EP '645 discloses the claimed cooler-mating upper surface or renders its precise orientation obvious as a matter of routine packaging and assembly design. |

12

| | | |
|---|---|---|
| lubrication cooler" | | |
| **Claim 1:** "a lubrication flow path within the elongated unitary metallic body" | EP '645 ¶¶ [0014]–[0017] and Figures 3 and 4 disclose oil-supply channels 16, 17, 22, and 23 and oil-discharge channel 24 formed in carrier 1. | EP '645 discloses internal lubrication passages formed within the unitary cast carrier. |
| **Claim 1:** the flow path "extends between the filter housing and the second end to facilitate fluid flow between the engine lubrication system and the filter housing" | EP '645 explains that oil enters from the crankcase through channels 22 and 16, passes through oil cooler 6, travels through channels 17 and 23 to oil filter 5, and returns through discharge channel 24 to the crankcase. | EP '645's internal passages connect the engine lubrication network, cooler, and filter in the same functional relationship required by claim 1. |
| **Claim 1:** "a plurality of casted apertures in at least one end of the elongated unitary metallic body" | EP '645 ¶¶ [0007] and [0011] and Figures 1–4 disclose multiple fastening holes 4 and auxiliary holes 14 formed in carrier 1 for receiving fastening and auxiliary screws. | EP '645 discloses multiple apertures in the cast carrier. To the extent "casted apertures" requires that the initial openings be formed during casting rather than solely by later machining, forming initial holes or bosses during casting was a routine manufacturing choice for a cast-metal component. |
| **Claim 1:** "threading at least one of the plurality of casted apertures for mating with a respective threaded member" | WO '738 ¶ [0028] and Figure 6 disclose three internally threaded holes in connection component 4 that directly receive externally threaded fastening screws 11. | A skilled artisan would have applied WO '738's known threaded-hole arrangement to one or more of EP '645's fastening apertures to permit direct threaded attachment. Tapping a hole in a cast component was a conventional machining operation producing the predictable result of direct engagement with a threaded fastener. |

13

| | | |
|---|---|---|
| **Claim 1 as a whole** | EP '645 discloses the unitary cast oil-filter and oil-cooler carrier, engine and cooler mating surfaces, internal oil passages, and multiple fastening apertures. EP '848 supplies the express cast-aluminum teaching. WO '738 supplies internally threaded apertures receiving externally threaded members. | Claim 1 would have been obvious over EP '645 in view of EP '848 and WO '738, together with the ordinary knowledge of a person skilled in casting, machining, and engine-lubrication assemblies. |
| **Claim 2:** "threading each remaining casted aperture of the plurality of casted apertures for mating with a respective threaded member" | EP '645 discloses multiple fastening and auxiliary apertures. WO '738 ¶ [0028] discloses multiple internally threaded holes, including three threaded holes receiving respective screws. | Once one aperture was tapped for direct threaded attachment, tapping the remaining attachment apertures would have been a routine repetition of the same known machining technique, selected according to the number of components to be secured. |
| **Claim 3:** "the lubrication flow path extends along a common longitudinal axis with the elongated unitary metallic body" | EP '848 ¶¶ [0034]–[0036] and Figure 4 disclose bypass channel 7 transitioning directly into connecting channel 11, with the channels arranged coaxially relative to longitudinal center axis 13. | A skilled artisan would have used EP '848's coaxial, longitudinal oil-channel arrangement in EP '645's cast carrier to simplify machining and assembly, provide compact packaging, and reduce bends and flow resistance. Claim 3 would have been obvious over EP '645 in view of EP '848. |
| **Claim 4:** "a plurality of apertures in the upper surface for attaching a lubrication cooler" | EP '645 ¶ [0011] discloses fastening holes 4 and auxiliary holes 14 in the cooler-connection region of carrier 1 for securing oil cooler 6. | EP '645 discloses the additional limitation of claim 4. |
| **Claim 5:** "threading each | EP '645 discloses multiple apertures in the cooler-attachment | Tapping each of EP '645's cooler-attachment apertures as taught by |

14

| of the plurality of apertures in the upper surface" | surface. WO '738 ¶ [0028] discloses multiple internally threaded holes that receive fastening screws. | WO '738 would have been a routine and predictable way to secure the cooler directly to the carrier. |
|---|---|---|
| **Claim 6:** "providing threads in the filter housing to receive a thread closure" | GB '199 discloses filter housing 30 with an internally threaded annular surface 34 at its open end. That surface engages the complementary externally threaded surface 36 of end cap 40. | A skilled artisan would have used GB '199's threaded filter-housing closure in EP '645's filter receptacle to provide a removable, sealable cap for filter replacement. The modification uses a known closure for its established purpose and would have produced predictable results. |
| **Claim 7:** the body includes "a plurality of threaded apertures in the upper surface for attaching a lubrication cooler" | EP '645 supplies the upper cooler-attachment surface and its multiple fastening apertures. WO '738 supplies multiple internally threaded fastening holes. GB '199 supplies the threaded filter-housing closure inherited from claim 6. | Combining EP '645's cooler-attachment arrangement with WO '738's threaded holes and GB '199's threaded filter closure would have been the predictable aggregation of known attachment and closure features. |
| **Claim 8:** "A method for manufacturing an adaptor for an engine lubrication system" by "casting a unitary metallic body" | EP '645 ¶ [0007] discloses an integrally cast oil-treatment carrier. EP '848 ¶ [0026] expressly teaches forming the carrier as an aluminum casting. | For the same reasons stated for claim 1, using cast aluminum for EP '645's integral carrier would have been obvious. |
| **Claim 8:** "a filter housing at a first end" | EP '645 ¶ [0008] and Figures 2 and 4 disclose the oil-filter receptacle at an end region of carrier 1. | EP '645 discloses or renders obvious this limitation. |
| **Claim 8:** "a lower surface … configured to mate with the | EP '645 ¶ [0007] discloses connection surface 2 for sealing engagement with the crankcase and its lubrication openings. | EP '645 discloses this limitation. |

| | | |
|---|---|---|
| engine lubrication system" | | |
| **Claim 8:** "an upper surface … configured to mate with a lubrication cooler" | EP '645 ¶ [0011] and Figures 2 and 4 disclose cooler-connection surface 11 for mounting oil cooler 6. | EP '645 discloses this limitation. |
| **Claim 8:** "a lubrication flow path that extends within the unitary metallic body to connect the engine lubrication network and the filter housing" | EP '645 ¶¶ [0014]–[0017] disclose internal channels carrying oil from the engine through the cooler to filter 5 and returning filtered oil to the engine. | EP '645 discloses the claimed internal fluid connection. |
| **Claim 8:** "a casted aperture in the unitary metallic body" | EP '645 discloses fastening holes 4 and auxiliary holes 14 in cast carrier 1. | EP '645 discloses an aperture in the cast body. Forming an initial aperture or aperture-forming boss during casting would also have been a routine casting choice. |
| **Claim 8:** "internally threading the casted aperture for mating with an externally threaded member" | WO '738 ¶ [0028] discloses internally threaded holes in connection component 4 receiving externally threaded screws 11. | Applying WO '738's threading technique to an aperture in EP '645's carrier would have been conventional tapping and would have produced the predictable result of direct threaded engagement. |
| **Claim 8 as a whole** | EP '645 supplies the integral carrier, filter housing, mating surfaces, internal oil path, and aperture. EP '848 supplies cast aluminum. WO '738 supplies the internally threaded aperture and | Claim 8 would have been obvious over EP '645 in view of EP '848 and WO '738 and ordinary mechanical-threading practices. |

16

| | corresponding externally threaded fastener. | |
|---|---|---|
| **Claim 9:** "one or more additional casted apertures" and "threading each" to mate with a respective threaded member | EP '645 discloses multiple fastening and auxiliary apertures in cast carrier 1. WO '738 discloses multiple internally threaded apertures receiving respective fastening screws. | Repeating the known tapping operation for additional apertures would have been a routine machining and attachment choice. |
| **Claim 10:** "providing a plurality of apertures in the upper surface for attaching a lubrication cooler" | EP '645 ¶ [0011] discloses fastening holes 4 and auxiliary holes 14 in the cooler-connection region for attaching oil cooler 6. | EP '645 discloses the additional limitation of claim 10. |
| **Claim 11:** "threading each of the plurality of apertures in the upper surface for attaching a lubrication cooler" | EP '645 supplies the multiple cooler-attachment apertures. WO '738 ¶ [0028] teaches multiple internally threaded fastening holes. | Threading each cooler-attachment aperture would have been the routine application of WO '738's threaded-hole arrangement to EP '645's known cooler mounting structure. |
| **Claim 12:** "An adaptor for an engine lubrication system" comprising "a single-cast metallic body" | EP '645 discloses an integrally cast carrier for an engine oil-treatment system. EP '848 ¶ [0026] expressly discloses a carrier manufactured as an aluminum casting. | Combining EP '645's single cast carrier with EP '848's cast-aluminum material yields the claimed single-cast metallic body. |
| **Claim 12:** "a filter housing at a first end" | EP '645 ¶ [0008] and Figures 2 and 4 disclose the oil-filter | EP '645 discloses or renders obvious this limitation. |

17

| | | |
|---|---|---|
| | receptacle at one end region of carrier 1. | |
| **Claim 12:** "a lower surface … configured to mate with an engine lubrication system" | EP '645 ¶ [0007] discloses crankcase connection surface 2 and the corresponding oil interfaces. | EP '645 discloses this limitation. |
| **Claim 12:** "an upper surface … configured to mate with a lubrication cooler" | EP '645 ¶ [0011] discloses cooler-connection surface 11 for mounting oil cooler 6. | EP '645 discloses this limitation. |
| **Claim 12:** "a lubrication flow path extending within the single-cast metallic body … to connect the lower surface … with the filter housing" | EP '645 ¶¶ [0014]–[0017] disclose internal channels 16, 17, 22, 23, and 24 connecting the crankcase interface, oil cooler, and oil filter. | EP '645 discloses the claimed internal flow-path relationship. |
| **Claim 12:** "an internally-threaded casted aperture for mating with an externally threaded member" | EP '645 discloses apertures in the cast carrier. WO '738 ¶ [0028] discloses internally threaded holes that directly receive externally threaded fastening screws. | It would have been obvious to tap one of EP '645's carrier apertures as taught by WO '738. To the extent the claim requires the initial aperture to arise during casting, forming a pilot opening or boss in the casting and subsequently tapping it was a conventional manufacturing sequence. |
| **Claim 12 as a whole** | EP '645 supplies the integrated oil-filter and cooler carrier and internal lubrication path; EP '848 supplies the express cast-metal construction; and WO '738 | Claim 12 would have been obvious over EP '645 in view of EP '848 and WO '738. |

| | supplies direct threaded engagement. | |
|---|---|---|
| **Claim 13:** "one or more additional casted apertures in the single-cast metallic body" | EP '645 discloses multiple fastening holes 4 and auxiliary holes 14 in cast carrier 1. | EP '645 discloses or renders obvious this limitation. |
| **Claim 14:** the additional apertures are "internally threaded casted apertures" mating with respective externally threaded members | WO '738 ¶ [0028] discloses multiple internally threaded holes receiving respective externally threaded fastening screws. | Tapping the additional apertures in EP '645's carrier according to WO '738 would have been routine and predictable. |
| **Claim 15:** the additional apertures "are in the upper surface for mating with a lubrication cooler" | EP '645 ¶ [0011] discloses multiple apertures in the carrier's cooler-connection surface for mounting oil cooler 6. | EP '645 discloses the location and function required by claim 15. |
| **Claim 16:** the cooler-mating apertures are internally threaded for mating with externally threaded members of the cooler | EP '645 supplies the cooler-attachment surface and apertures. WO '738 supplies internally threaded apertures receiving corresponding externally threaded fastening screws. | Applying WO '738's threaded-hole connection to EP '645's cooler-attachment apertures would have been a conventional means of directly securing the cooler to the carrier. |
| **Claim 17:** "the lubrication flow | EP '848 ¶¶ [0034]–[0036] disclose bypass channel 7 and connecting | A skilled artisan would have used EP '848's centered, coaxial oil-channel |

| | | |
|---|---|---|
| path is centered [and] extends along a common longitudinal axis with [the] single-cast" body | channel 11 arranged coaxially relative to longitudinal center axis 13. | arrangement in EP '645's carrier to achieve compact packaging, simplified machining and assembly, and reduced changes in flow direction. Claim 17 would have been obvious over EP '645 in view of EP '848. |
| **Claim 18:** "An adaptor for an engine lubrication system" comprising "a single-cast metallic body" | EP '645 discloses an integral cast oil-treatment carrier. EP '848 ¶ [0026] expressly teaches manufacturing the carrier as a cast-aluminum part. | The combined teachings yield the claimed single-cast metallic adaptor body. |
| **Claim 18:** "a filter housing at a first end" | EP '645 ¶ [0008] and Figures 2 and 4 disclose the receptacle for oil filter 5 at one end region of carrier 1. | EP '645 discloses or renders obvious this limitation. |
| **Claim 18:** "a first surface configured to mate with an engine lubrication system" | EP '645 ¶ [0007] discloses connection surface 2 for sealing attachment to the engine crankcase and communication with the engine oil network. | EP '645 discloses this limitation. |
| **Claim 18:** "a second surface between the filter housing and a second end … configured to mate with a lubrication cooler" | EP '645 ¶ [0011] and Figures 2 and 4 disclose connection surface 11 for mounting oil cooler 6 between the filter region and the opposite end of carrier 1. | EP '645 discloses or renders obvious the claimed cooler-mating surface and its relative position. |
| **Claim 18:** "lubrication flow path within | EP '645 ¶¶ [0014]–[0017] disclose internal oil channels connecting the crankcase oil interface to | EP '645 discloses the claimed internal lubrication connection. |

| | | |
|---|---|---|
| the single-cast metallic body that connects the first surface with the filter housing" | cooler 6 and filter 5 and returning filtered oil to the crankcase. | |
| **Claim 18:** "an internally threaded casted aperture configured to mate with an externally threaded member" | EP '645 discloses apertures in its cast carrier. WO '738 ¶ [0028] discloses internally threaded holes receiving externally threaded screws. | Tapping one of EP '645's cast-body apertures as taught by WO '738 would have been a routine and predictable use of a conventional threaded connection. |
| **Claim 18 as a whole** | EP '645 supplies the integrated carrier, filter housing, engine and cooler mating surfaces, and internal oil path; EP '848 supplies the express cast-aluminum construction; and WO '738 supplies the internally threaded aperture. | Claim 18 would have been obvious over EP '645 in view of EP '848 and WO '738 and the ordinary knowledge of a skilled artisan. |

94.    The chart demonstrates that the limitations of independent claims 1, 8, 12, and 18 were disclosed by, or would have been obvious from, the combined teachings of EP '645, EP '848, and WO '738. The additional limitations of dependent claims 2–5, 7, 9–11, and 13–16 concern only the number, location, or threading of known attachment apertures. Claims 3 and 17 add the known coaxial longitudinal flow-path arrangement disclosed by EP '848. Claim 6 adds the known threaded filter-housing closure disclosed by GB '199, and claim 7 merely combines that known closure with known threaded cooler-attachment apertures.

95.    A person of ordinary skill would have had a reasonable expectation of success in making these combinations because aluminum casting, formation and machining of apertures,

tapping of internal threads, threaded fastening, threaded filter closures, and internal oil-channel routing were mature and predictable technologies before August 21, 2020.

96. The '755 Patent identifies no unexpected result arising from combining these known features. The alleged advance amounts to implementing conventional threaded connections and known internal oil-flow arrangements in a known integrally cast oil-filter and oil-cooler carrier.

97. Claims 1–18 therefore would have been obvious to a person of ordinary skill in the art before the earliest asserted priority date and are invalid under 35 U.S.C. § 103.

## ACTUAL AND JUSTICIABLE CONTROVERSY

98. Plaintiff incorporates paragraphs 1–97 as though fully set forth herein.

99. RB has taken an affirmative and concrete enforcement position that the Accused Product infringes the '755 Patent.

100. RB communicated that position through Amazon's APEX system in a manner intended to cause removal of Plaintiff's listing unless Plaintiff paid to participate, obtained a retraction, or filed suit.

101. Amazon removed the Accused Product as a direct consequence of RB's assertion.

102. RB has not withdrawn its infringement allegation.

103. Plaintiff disputes RB's infringement position and contends that the asserted claims are invalid.

104. The parties therefore have adverse legal interests regarding both infringement and validity.

105. The controversy is immediate and real because RB's assertion is presently preventing or impairing Plaintiff's sale of the Accused Product and exposes Plaintiff, its distributors, and its customers to a continuing threat of patent-enforcement activity.

22

## COUNT I
### DECLARATORY JUDGMENTS OF NON-INFRINGEMENT
**(U.S. Patent No. 12,234,755 B2)**

106. Plaintiff incorporates paragraphs 1–105 as though fully set forth herein.

107. An actual, substantial, immediate, and justiciable controversy exists between Plaintiff and RB concerning whether the Accused Product infringes the '755 Patent.

108. The Accused Product does not satisfy every limitation of any valid claim of the '755 Patent.

109. Plaintiff does not directly infringe any valid claim of the '755 Patent under 35 U.S.C. §§ 271(a) or 271(g).

110. Plaintiff does not induce infringement under 35 U.S.C. § 271(b).

111. Plaintiff does not contributorily infringe under 35 U.S.C. § 271(c).

112. The Accused Product does not infringe literally or under the doctrine of equivalents.

113. Plaintiff is entitled to a declaration that the manufacture, importation, marketing, offering for sale, sale, and use of the Accused Product do not infringe and have not infringed any valid claim of the '755 Patent.

## COUNT II
### DECLARATORY JUDGMENTS OF INVALIDITY
**(U.S. Patent No. 12,234,755 B2)**

114. Plaintiff incorporates paragraphs 1–113 as though fully set forth herein.

115. An actual, substantial, immediate, and justiciable controversy exists between Plaintiff and RB concerning the validity of the claims RB asserted against the Accused Product.

116. EP '645, EP '848, WO '738, and GB '199 were publicly available before the earliest asserted priority date of the '755 Patent.

23

117.  For the reasons pleaded above, a person of ordinary skill in the art would have had reason to combine those references and would have had a reasonable expectation of successfully obtaining the subject matter recited in claims 1–18.

118.  The combinations would have involved no more than the use of familiar components and manufacturing techniques according to their known functions and would have produced predictable results.

119.  Claims 1–18 of the '755 Patent would have been obvious to a person of ordinary skill in the art before August 21, 2020.

120.  Claims 1–18 are therefore invalid under 35 U.S.C. § 103.

121.  Plaintiff is entitled to a declaration that claims 1–18 of the '755 Patent are invalid and unenforceable against Plaintiff and the Accused Product.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable under Federal Rule of Civil Procedure 38.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against RB as follows:

A.     Declaring that Plaintiff's manufacture, importation, marketing, offering for sale, sale, and use of the Accused Product do not directly or indirectly infringe, either literally or under the doctrine of equivalents, any valid claim of U.S. Patent No. 12,234,755 B2;

B.     Declaring that claims 1–18 of U.S. Patent No. 12,234,755 B2 are invalid under 35 U.S.C. § 103;

C.	Permanently enjoining RB, its officers, agents, servants, employees, attorneys, and all persons acting in active concert or participation with them from maintaining, renewing, or submitting an Amazon infringement complaint against ASIN B0CT8P77SZ or a materially identical product based on the '755 Patent;

D.	Ordering RB to submit directly to Amazon a complete and unconditional retraction of the APEX complaint identified by Case ID 20279126711 and the infringement complaint identified by Complaint ID 20271987831;

E.	Declaring that Plaintiff is entitled to market and sell the Accused Product without interference based on the '755 Patent;

F.	Declaring this action exceptional under 35 U.S.C. § 285 and awarding Plaintiff its reasonable attorneys' fees;

G.	Awarding Plaintiff its taxable costs and expenses; and

H.	Granting such other and further relief as the Court deems just and proper.


Dated:	June 29, 2026.

**THE LAW OFFICE OF X. LYU, PLLC**

By: */s/   Jian Wang*
	Jian Wang, NYSBA No. 6315865
	36-36 Prince St., Ste 309A
	Flushing, New York 11354
	Phone: (212) 812-8253
	Email: jwang@lyulawpllc.com
	*PRO HAC VICE*

25